## SARLLS v. UNITED STATES.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE
WESTERN DISTRICT OF ARKANSAS.

No. 872. Submitted November 15, 1893. — Decided April 9, 1894.

Lager beer is not " spirituous liquors" nor " wine " within the meaning of those terms as used in Rev. Stat. § 2139.

THE case is stated in the opinion.

*Mr. A. H. Garland* for plaintiff in error.

*Mr. Assistant Attorney General Conrad* for defendants in error.

MR. JUSTICE SHIRAS delivered the opinion of the court.

At the May term, 1892, in the District Court of the United States for the Western District of Arkansas, the plaintiff in error was indicted and convicted of introducing, at the Choctaw Nation, in the Indian country, ten gallons of lager beer, which the indictment averred were "spirituous liquors," and the introduction of which into the Indian country was made an offence, punishable by fine and imprisonment, by section 2139, Revised Statutes of the United States.

That section is in the following terms:

"No ardent spirits shall be introduced under any pretence into the Indian country. . Every person (except an Indian in the Indian country) who sells, exchanges, gives, barters, or disposes of any spirituous liquors or wine to any Indian under the charge of any Indian superintendent or agent, or introduces or attempts to introduce any spirituous liquor or wine into the Indian country, shall be punishable by imprisonment for not more than two years and by a fine of not more than three hundred dollars. But it shall be a sufficient defence to any charge of introducing or attempting to introduce liquor into the Indian country, that the acts charged were done by order of or under authority from the War Department, or any officer duly authorized thereunto by the War Department."

It appears that such a provision was originally enacted on the 9th of July, 1832, c. 74, § 4, 4 Stat. 564; was amended by acts of 15th of March, 1864, c. 33, 13 Stat. 29, and 27th of February, 1877, c. 69, 19 Stat. 244; and was included in the Revised Statutes as said section 2139.

It was contended, on behalf of the defendant, in the court below that lager beer is not "spirituous liquor or wine," within the meaning of those terms in the statute, and that, therefore, the defendant was wrongly convicted. The court below refused, on request, to so instruct the jury, and to this refusal, and to the judgment of the court sentencing the defendant to pay a fine of two hundred and fifty dollars, and to be imprisoned for a term of three months, error is assigned.

It thus appears that the sole question presented for our con-

sideration by this record is whether "lager beer" is a "spirit-uous liquor or wine." The only evidence on this subject, disclosed by the record, was to the effect that lager beer is a malt liquor, and is intoxicating. To enable us to solve the question we must look to the popular signification of the terms used, and also to the phraseology of other statutes of the United States in which like terms appear. We are likewise entitled to any light that may be thrown on the subject by the decisions of respectable courts which have had to construe similar terms in penal statutes.

The Century Dictionary defines *spirituous liquors* as "containing much alcohol; distilled, whether pure or compounded, *as distinguished from fermented;* ardent: applied to a liquor for drinking." *Malt liquor* is defined by the same authority as "a general term for an alcoholic beverage produced merely by the fermentation of malt, as opposed to those obtained by distillation of malt or mash."

Webster defines the word "spirituous" as rum, whiskey, brandy, and other distilled liquors, as distinguished from wine and malt liquors. Worcester says that "ardent spirits" is a term applied to liquors obtained by distillation, such as rum, whiskey, brandy, and gin.

So far, therefore, as popular usage goes, according to the leading authorities, "lager beer," as a malt liquor made by fermentation, is not included in the term "spirituous liquor," the result of distillation.

Looking to other statutes of the United States, we find that the terms "spirituous liquors" or "distilled spirits," and "malt liquors," are not used as synonymous. On the contrary, they are treated as different substances, and in the system of revenue restrictions, in providing for their manufacture and sale, they are regarded as distinct. Thus, in section 3244, Revised Statutes, it is provided, "Wholesale dealers in malt liquors shall pay fifty dollars. Every person who sells or offers for sale malt liquors in larger quantities than five gallons at one time, but who does not deal in *spirituous liquors,* shall be regarded as a wholesale dealer in malt liquors." And in the same section it is enacted that "every person who

manufactures fermented liquors of any name or description for sale, from malt, wholly or in part, or from any substitute therefor, shall be deemed a brewer," and "shall pay one hundred dollars;" and "rectifiers of distilled spirits shall pay two hundred dollars;" "wholesale liquor dealers shall pay one hundred dollars," and "wholesale dealers in malt liquors shall pay fifty dollars."

Such provisions seem to plainly distinguish "malt liquors," the product of fermentation, from "spirituous liquors," the result of distillation.

Most of the decisions to which our attention has been directed are to the same effect.

A New Hampshire statute in terms declared that the words "spirituous liquors" shall be taken to include intoxicating liquors and all mixed liquors, any part of which is spirituous or intoxicating. But the Supreme Court, in *State* v. *Adams*, 51 N. H. 568, 569, held that ale, porter, and cider were not within the statute; that the indictment charged the sale of "spirituous liquors" only; that fermented liquors are not, in common parlance, spirituous liquors, and that the fact that ale contains from four to ten per cent of alcohol which can be separated from it by distillation does not bring it within the class of liquors called spirituous.

In *Commonwealth* v. *Grey*, 2 Gray, 501, 502, Metcalf, J., said: "All spirituous liquor is intoxicating, yet all intoxicating liquor is not spirituous. In common parlance, spirituous liquor means distilled liquor. Fermented liquor, though intoxicating, is not spirituous."

In *Tuker* v. *State*, (Alabama,) 8 South. Rep. 855, it was said: "Malt liquors have neither vinous nor spirituous liquors as an ingredient. Spirituous liquors, vinous liquors, and malt liquors are not synonymous terms, but each refers to a liquor separate and distinct from each other. Lager beer is a malt liquor, and the courts take judicial notice of the fact. The statute having prohibited the sale of spirituous and vinous liquors only, malt liquors are not included. It was error, therefore, to charge the jury that a sale of lager beer was in violation of the statute."

There are other cases in which the terms were similarly construed by state courts, but which it is unnecessary here to cite.

In the District Court of the United States for the District of Montana, *In re McDonough*, 49 Fed. Rep. 360, it was held that beer is not a spirituous liquor, within the meaning of the statute before us; and we have been referred to a case to the same effect in the District Court of the United States for the Eastern District of Texas, but which case is not reported.

In *Hollender* v. *Magone*, 149 U. S. 586, this court reversed the Circuit Court of the United States for the Southern District of New York, for construing, in section 2927, Revised Statutes, the word "liquors," as including beer, and it was said that "it may be laid down as a general proposition that where the term 'liquor' is used in a special sense, spirituous and distilled beverages are intended, in contradistinction to fermented ones."

To the contrary of these definitions and decisions, the principal case is that of *State* v. *Giersch*, 4 S. E. Rep. 193, the reasoning and conclusion wherein were adopted by the court below. That was a case where a statute of North Carolina (Code, §§ 3110, 3116) prohibited the introduction and sale of spirituous liquors, and the court held those terms to be generic, and to include all intoxicating liquors containing alcohol, whether distilled, fermented, or vinous.

The reasoning on which such a conclusion is reached excludes the common and popular signification of the words, and finds the meaning of the statute in the fact, true in a scientific sense, that alcohol is found in fermented, as well as in distilled, liquors, and that the purpose of the statute is to prevent the mischief occasioned by the use of intoxicating drinks.

We cannot agree with this method of reading a penal statute. The purpose of such a statute is to notify the public of the legislative intent, not to furnish scientific definitions. That intent is, in most cases, to be found by giving to the words the meaning in which they are used in ordinary speech.

Nor can courts, in construing penal statutes, safely disregard the popular signification of the terms employed, in order to bring acts, otherwise lawful, within the effect of such statutes, because of a supposed public policy or purpose.   The danger of substituting for the meaning of a penal statute, according to the popular and received sense, the conjecture of judges as to a supposed mischief to be corrected, is pointed out by Chief Justice Marshall, when, in the case of *United States* v. *Wiltberger*, 5 Wheat. 76, 96, he said : " To determine that a case is within the intention of a statute, its language must authorize us to say so.   It would be dangerous, indeed, to carry the principle that a case which is within the reason or mischief of a statute is within its provisions, so far as to punish a crime not enumerated in the statute, because it is of equal atrocity, or of a kindred character, with those which are enumerated. If this principle has ever been recognized in expounding criminal law, it has been in cases of considerable irritation, which it would be unsafe to consider as precedents forming a general rule for other cases."

There is a difference, overlooked by the court below, between the language of the North Carolina statute and of section 2139, in that the former uses only the words " spirituous liquors," but in the latter the words are " spirituous liquors or wines."

That by the term " spirituous liquors," used alone in a statute, it may with some plausibility be contended the legislature meant to signify all intoxicating drinks.   But the case is quite different when " wines " are added to the articles prohibited. In that case it is evident that the legislature did not think that all intoxicating drinks were included in the term " spirituous liquors," or they would not have named " wines."   Under the construction put by the court below on the words " spirituous liquors," as including all liquors that are intoxicating, and hence as including lager beer, the word " wines " is useless in the statute.

If, then, lager beer is not reasonably within the terms of the statute as a " spirituous liquor," can it be said to be included in the term " wines ? "

Tacitus does, indeed, in his account of the customs of the ancient Germans, speak of their using a liquor made from barley — " *corruptus in quendam similitudinem vini*," " fermented into a kind of resemblance to wine." This passage is one of the earliest references we have to malt liquor. That it was potent, we learn from the same author, who tells us that the German warriors would deliberate upon and form their designs when sober, and then get drunk, presumably on this barley wine, and carry their projects into effect.

But if beer is *like* wine, in its appearance and effects, it is plainly not wine, either in its popular or technical meaning.

In *State* v. *Moore*, 5 Blackford, 118, it was said : " This was an indictment for retailing port wine by small measure without license. . . . The prosecution is founded on that part of the act relative to crime and punishment which forbids the sale of spirituous liquors by a less quantity than a quart at a time without license. (R. C. 1831, p. 192.) That is a penal statute, and must receive a strict construction. We are not at liberty to extend its meaning beyond its exact literal sense. Spirit is the name of an inflammable liquor produced by distillation. Wine is the fermented juice of the grape, produced by fermentation. We cannot so far confound the signification of these general terms as to call wine a spirituous liquor. We think port wine is not within the purview of the statute. If its omission is an evil, the courts have no power to remedy it."

The Supreme Court of Tennessee, in *Caswell* v. *The State*, 2 Humphrey, 402, 403, said : " The question for consideration is, whether wine is a spirituous liquor, within the meaning of the statute passed in the year 1837, c. 120. We think it is not. Wine is a fermented liquor. Spirits are distilled liquors. This distinction exists, not only in common parlance, but is recognized by chemists and physiologists. . . . We therefore think that the words ' spirituous liquors ' embrace those which are produced by distillation, but not those produced by fermentation."

Since this cause was tried, an amendatory act has been passed by Congress, approved July 23, 1892, c. 234, 27 Stat.

260, providing that the section shall read as follows: "No ardent spirits, ale, beer, wine, or intoxicating liquor or liquors of whatever kind shall be introduced, under any pretence, into the Indian country. Every person who sells, exchanges, gives, barters, or disposes of any ardent spirits, ale, beer, wine, or intoxicating liquors of any kind to any Indian under charge of any Indian superintendent or agent, or introduces or attempts to introduce any ardent spirits, ale, wine, beer, or intoxicating liquors of any kind into the Indian country, shall be punished by imprisonment for not more than two years, and by fine of not more than three hundred dollars for each offence."

This would seem to show that Congress regarded the act, as it previously stood, as not including ale and beer in its terms. At any rate, the temptation to the courts to stretch the law to cover an acknowledged evil is now removed.

The judgment of the court below is

*Reversed, and the cause remanded with directions to quash the indictment and discharge the defendant.*