THE STATE vs. HUNKINS.

*April 6 — April 23, 1895.*

*Criminal law: Fraudulent conveyance of incumbered real estate.*

The offense of fraudulently conveying incumbered real estate, under ch. 244, Laws of 1887 (S. & B. Ann. Stats. sec. 4431a), may be committed by one who does not himself execute the deed but procures another person, who holds the legal title in trust for him and who does not know of the incumbrance, to make the conveyance. PINNEY, J., dissents.

REPORTED from the circuit court for Waukesha county: A. SCOTT SLOAN, Circuit Judge. *Questions answered in the affirmative.*

This is a prosecution brought in the circuit court for
Waukesha county for fraudulently conveying incumbered
real estate without informing the grantee of the incum-
brance. It was brought under the provisions of ch. 244,
Laws of 1887 (S. & B. Ann. Stats. sec. 4431a), which pro-
vides that " any person who shall convey real estate, know-
ing that an incumbrance exists thereon, with intent to de-
fraud, without, before the consideration is paid, informing
the grantee of the existence and nature of such incumbrance,
shall be punished " by a certain term of imprisonment, or by
fine, or both, in the discretion of the court. Upon the trial
the jury returned a verdict of guilty, and the case has been
reported by the circuit judge to this court, under sec. 4721,
R. S., for an answer to two questions of law.

The information charges that on the 12th day of June,
1893, at said county, the defendant conveyed the record title
to certain described real estate in said county to one Donald
McKay, in trust for him, the said *Wilbur F. Hunkins;* " that
thereafter, and on the 26th day of June, A. D. 1893, the
said *Wilbur F. Hunkins* entered into a contract in writing,
for a valuable consideration, with one W. S. Parsons, to
convey to the said W. S. Parsons, or such other person or
persons as the said W. S. Parsons might name, the afore-
said and above-described real estate; that thereafter, under
the direction of said *Wilbur F. Hunkins,* the record title to
said real estate was conveyed to sundry persons, in trust for
said *Wilbur F. Hunkins,* until, on the 17th day of July,
A. D. 1893, the record title to said real estate was in Aurelia
S. Hunkins, the mother of said *Wilbur F. Hunkins,* and held
in trust by her for him; that on the 17th day of July, A. D.
1893, in pursuance to said written agreement with the said
W. S. Parsons, the said *Wilbur F. Hunkins* conveyed by the
hand of his mother, the said Aurelia S. Hunkins, the real
estate aforesaid to Charles McCumber and Dora McCumber,
the persons who had been designated by the said W. S. Par-

sons in pursuance to said written contract to whom said real estate was to be conveyed by the said *Wilbur F. Hunkins;* that at the time of said conveyances there was a mortgage and incumbrance upon the said real estate to the amount of $1,500, which was not of record, but which was in the possession of and known to the said *Wilbur F. Hunkins;* and that the said *Wilbur F. Hunkins* did convey said real estate as aforesaid to Charles McCumber and Dora McCumber, knowing that an incumbrance existed thereon, and with intent to defraud, without, before the consideration was paid, informing the said Charles McCumber and Dora McCumber, or either of them, the grantees in said conveyances, of the existence and nature of said incumbrance, against the peace and dignity of the state of Wisconsin."

It further appears by the report of the circuit judge that the allegations of the information were substantially proven upon the trial, but it does not appear that Aurelia S. Hunkins, who performed the manual act of conveying the real estate, had any knowledge of the incumbrance existing upon the land. It also appears that the defendant, as soon as the deed was executed and the consideration paid, hurried at once to the office of the register of deeds, and placed the prior mortgage on record a few minutes before the grantees in the deed put their deed upon record.

Upon this state of facts the circuit judge asks the following questions: First. Does the information state an offense under sec. 4431*a*, S. & B. Ann. Stats.? And, second, Under the facts stated was the defendant properly convicted?

For the plaintiff there was a brief by the *Attorney General* and *L. K. Luse*, Assistant Attorney General, and oral argument by *Mr. Luse*. They argued, among other things, that the defendant, having aided and abetted the commission of the offense, could be punished as a principal, without proving the guilt of the other person. 1 Bish. Crim. Law, 637, 650–653; Bish. Stat. Crimes, §§ 135–139; 2 Bish. Crim. Proc.

The State vs. Hunkins.

§§ 3, 14, 59; *Spear v. Hiles,* 67 Wis. 363; *State v. Snell,* 46 id. 529; *Albritton v. State,* 32 Fla. 258. See, also, *Beng v. Comm.* 92 Ky. 1; *Griffith v. State,* 90 Ala. 583; *Usselton v. People,* 149 Ill. 612; *State v. Phelps,* 59 N. W. Rep. 471; *State v. Duncan,* 7 Wash. 336; *Comm. v. Ahearn,* 160 Mass. 300; *State v. Cameron,* 2 Pin. 490; *Leonard v. State,* 77 Ga. 764; *Comm. v. Carter,* 94 Ky. 527; *United States v. Snyder,* 14 Fed. Rep. 554; *Boggus v. State,* 34 Ga. 275; *State v. Sprague,* 4 R. I. 260; *Rex v. Potts,* Russ. & R. 353; *United States v. Stevens,* 44 Fed. Rep. 132; *United States v. Mills,* 7 Pet. 138; *Engeman v. State,* 54 N. J. Law, 257; *Kinnebrew v. State,* 80 Ga. 232; *State v. Miller,* 100 Mo. 606. For cases involving prosecutions for like offenses in several of the states, see *People v. Cox,* 45 Cal. 342; *Comm. v. Williams,* 127 Mass. 285; *Comm. v. Harriman,* id. 287; *State v. Jones,* 68 Mo. 197; *Kerr v. State,* 36 Ohio St. 614; *State v. Crabb,* 121 Mo. 554.

For the defendant there was a brief by *Ryan & Merton,* and oral argument by *T. E. Ryan.*

WINSLOW, J. The contention of the defendant is that no one can be convicted of the offense created by sec. 4431*a*, S. & B. Ann. Stats., save the person who *executes* the conveyance. If this be true, then no offense was committed by any person in the present case, because the defendant who had the fraudulent intent did not execute the conveyance, and Aurelia Hunkins, who did execute the conveyance, was innocent of any knowledge of the fraud. Thus the wrong which the law aims to punish has been effectually done, but, because the person who signed the deed was innocent of fraudulent intent, no one is guilty. This construction emasculates the statute, and makes its evasion ridiculously easy. All that the fraudulent vendor has to do is to place the title in the name of an innocent party and have him make the conveyance, and by this means the act which, if done by his

The State vs. Hunkins.

own hand, would be criminal, has become purged of all criminality because done at his direction by the hand of an innocent tool.

The law is scarcely as helpless as this. The principle is well established that one who commits a crime through an innocent agent is a principal, though he may be personally absent when the act itself is done. 1 Bish. New Crim. Law, § 651. This principle has been frequently applied to the crime of forgery or uttering forged papers, where the writing of the forged instrument or the uttering of it was done by an entirely innocent third party. 2 Bish. New Crim. Law, § 583*a;* *Comm. v. Foster,* 114 Mass. 311; *Comm. v. Hill,* 11 Mass. 136; *Gregory v. State,* 26 Ohio St. 510. The same principle has been applied to the offense of obtaining money by false pretenses. *People v. Adams,* 3 Denio, 190; *S. C.* 1 N. Y. 173. The principle undoubtedly applies to statutory crimes. Bish. Stat. Crimes (2d ed.), § 139. In this view of the law it is clear that the defendant in the present case was the principal in the commission of the fraudulent act, and in a legal sense did "convey" the real estate, although the manual act of signing the deed was done by an innocent third person.

There are no other questions which require attention. It follows from these views that both questions submitted by the circuit judge must be answered in the affirmative.

*By the Court.*— It is so ordered.

PINNEY, J. I cannot concur in the conclusions at which the court has arrived in this case. I think it is entirely clear that the information does not charge an offense under sec. 4431*a,* S. & B. Ann. Stats.; nor does the proof show that any offense within this statute was committed. The case reported shows that the defendant committed a most reprehensible fraud, and that the person who did convey the real estate described, and who alone had capacity to do so,

was entirely innocent of any wrong in doing it. The statute is that any person "who shall *convey real estate*, knowing that an incumbrance exists thereon, with intent to defraud," etc., shall be punished, etc. The language describing the offense has a strictly technical meaning. It speaks of an act that has a well-defined effect in the law. The word "convey" is clearly used in its appropriate technical and legal sense, as the act of passing the title to land by an appropriate conveyance by the grantor to the grantee. *Abendroth v. Greenwich,* 29 Conn. 365; R. S. sec. 2242. In order that real estate shall be *conveyed* with intent to defraud, within the meaning of this statute, there must be a deed of it executed by some one having the title and competent in law to convey it, and this deed must operate to pass the title. No other person can be guilty of the offense, except by aiding or abetting its commission by one having legal capacity and ability to convey and actually conveying with intent to defraud, within the statute. The case where one fraudulently procures the owner of the legal title to convey innocently and without intent to defraud, is not, I think, within the language of the statute, upon any admissible principle for construing criminal enactments.

Criminal statutes "can never be expanded against the accused so as to bring within their penalties any person who is not within their letter," and "one may defend himself by showing, if he can, that either the main part of the enactment, or some exceptive clause thereof, is so unguardedly worded as to open an escape for him through the letter, his act being still a complete violation of its spirit." Bish. Stat. Crimes, §§ 230, 232. In order to make the act criminal, the universal rule is that, upon some sensible and permissible construction of the enactment, the case is brought within its language. Courts have no commission to bend the statute to a particular case, upon the theory that it is within its reason and spirit, though not within its language, on the

assumption that the accused has committed an act for which he ought to be punished, similar in character to the offense against which the statute is directed; otherwise all distinctions between acts innocent and unlawful would be lost sight of, and no certain rule would remain for regulating human conduct.

While it is true " that one who commits a crime through an innocent agent is a principal, though he may be personally absent when the act itself is done," this is subject to the qualification that such person has the legal capacity and ability to commit the particular offense, or that the act of the agent is also criminal as to the agent himself.   This is illustrated in Bish. Stat. Crimes, § 145, where it is said:   " While, in general, one who assists another in a crime is to be regarded as a joint doer with him, the words 'actually occupy,' referring to the place of committing an offense, seem to have been understood as excluding the idea of guilt in one who did not, in the language of the provision, actually occupy the place; and the nature of an offense may exclude the idea of criminality in any but the individual doing the act."   In the present case the defendant had no title, and no power to convey any, either fraudulently or innocently, nor did he convey or attempt to convey any real estate, but the party who alone was able to convey it did so innocently.   Here was no case of aiding or abetting the commission of a criminal offense within the cases relied on by the state, for, within the plainest principles, no criminal offense was committed; and while, in a general sense, the case may be said to be within the spirit and meaning of the amended statute, yet it is not provided for by it, but " such a case must be disposed of according to the prior law, and the legislature alone can cure the defect."   It is what is termed a *casus omissus.* Bish. Stat. Crimes, § 146.

In the case of *U. S. v. Wiltberger*, 5 Wheat. 95, MARSHALL, C. J., speaking of the rule that penal laws are to be con-

strued strictly, and of the contention that the intention of the legislature must govern, and that if a case was within such intention it must be considered within the letter of the statute, and so if within the reason of the statute, said that the rule that penal statutes are to be construed strictly is founded " on the tenderness of the law for the rights of individuals, and on the plain principle that the power of punishment is vested in the legislative department, not in the judicial department. It is the legislature, not the court, which is to define a crime and ordain its punishment. . . . The intention of the legislature is to be collected from the words they employ. Where there is no ambiguity in the words, there is no room for construction. . . . To determine that a case is within the intention of a statute, its language must authorize us to say so. It would be dangerous, indeed, to carry the principle that a case which is within the reason or mischief of a statute is within its provisions, so far as to punish a crime not enumerated in a statute, because it is of equal atrocity or of kindred character with those which are enumerated." To the same effect are the cases of *U. S. v. Chase*, 135 U. S. 261, and *Sarlls v. U. S.* 152 U. S. 575. In *Cleveland v. Norton*, 6 Cush. 383, it was laid down by SHAW, C. J., that "all penal acts are to be construed strictly, and not extended by equity, or by the probable or supposed intention of the legislature as derived from doubtful words; but that, in order to charge a party with a penalty, he must be brought within its operation, as manifested by express words or necessary implication." *Monson v. Chester*, 22 Pick. 387; *People ex rel. Johnson v. Peacock*, 98 Ill. 172. The acts constituting the offense must be both within the letter and the spirit of the statute. *Lair v. Killmer*, 25 N. J. Law, 522; *Shaw v. Clark*, 49 Mich. 384.

The language of the statute is extremely plain, and includes only the case where a person has title to real estate and conveys it, knowing that it is incumbered, with intent

to defraud, etc. It is too plain to need construction. When a party aids or abets or procures another, having title to real estate, to convey it, such other person knowing that it is incumbered, with intent to defraud, he would be guilty as a principal offender with the person making such conveyance. But in order to sustain this conviction it is necessary to go further and declare that the statute makes it an offense for one to induce or procure another, having title to real estate and not knowing it is incumbered, to convey it innocently to a third party and without intention to defraud, a case clearly not within the statute, although he might procure and induce the making of the conveyance for a fraudulent purpose of his own.

I think both questions submitted should be answered in the negative.